IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

EARL HOLMES,                              )
                                         )
                    Plaintiff,           )
                                         )
vs.                                      )        Case No. CIV-06-796-R
                                         )
UNITED STATES OF AMERICA,                )
et al.,                                  )
                                         )
                    Defendants.          )

## REPORT AND RECOMMENDATION

This matter is before the Court on the motion for summary judgment filed by the United States. Plaintiff has responded in opposition to the motion and the United States has replied. Plaintiff then filed a "Motion to Strike Defendant's Subject-Matter Jurisdiction Defense Pursuant to Fed. R. Civ. P., Rule 12(f)," which the undersigned has construed as a sur-reply. Accordingly, the motion for summary judgment is at issue and is ready for disposition. United States District Judge David L. Russell has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the reasons stated herein, it is recommended that the motion for summary judgment be granted insofar as it pertains to the United States' liability for the acts and omissions of Dr. Harper, but otherwise denied.

## I.   PROCEDURAL HISTORY

Plaintiff is a federal prisoner and he originally brought this action pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671-80, Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and 28 U.S.C. § 1367, alleging federal and state tort claims and constitutional violations stemming from his

incarceration at the Federal Correctional Institution in El Reno, Oklahoma (FCI-El Reno). In a three-count complaint, Plaintiff alleged that the Defendants owed him a duty to provide proper and timely treatment for his detached retina and that the failure to do so violated various statutory and constitutional rights.  He also included a state medical malpractice claim in his complaint.  Named as Defendants in the original complaint were the United States; FCI-El Reno; Jack Jones, the Medical Administrator at FCI-El Reno; B. Malcher, M.D., a physician at FCI-El Reno; T. C. Peterson, the Warden at FCI-El Reno; James Lee, a unit counselor at FCI-El Reno; Randy Ferguson, a correctional officer at FCI-El Reno; and, E. Harper, O.D., a consulting optometrist for FCI-El Reno.

The undersigned entered a Report and Recommendation on August 23, 2006, recommending that Plaintiff's FTCA and Bivens claims be dismissed without prejudice for failure to exhaust administrative remedies and that the Court decline to exercise jurisdiction over Plaintiff's supplemental state tort claim.  Report and Recommendation, [Doc. No. 6], p. 8.  Plaintiff objected to the Report and Recommendation and provided the Court with copies of an administrative claim that he filed with the United States and a letter from the Department of Justice ("DOJ") denying his claim.  Objections to the Report and Recommendation, [Doc.  No. 7], Exs. A-B.  Judge Russell reviewed the Report and Recommendation de novo, treated the copies of Plaintiff's administrative claim and the DOJ's denial letter as an amendment to the complaint, and concluded that Plaintiff showed that he had properly exhausted his administrative remedy under the FTCA, but that he had not properly exhausted his administrative remedy for his Bivens claims.  Order, [Doc. No. 8], pp. 2-3.  Accordingly, on October 3, 2006, Judge Russell, proceeding

under the law as it existed at the time, dismissed Plaintiff's <u>Bivens</u> claims against the individual defendants without prejudice and remanded the matter to the undersigned for further proceedings over Plaintiff's FTCA claims against the United States.  <u>Id.</u> at 3.[1] Thus, Plaintiff's remaining claims are against the United States under the FTCA and against Dr. Harper for alleged medical malpractice.

After Judge Russell remanded Plaintiff's remaining claims, the parties engaged in discovery, a dispositive motion deadline was set, and, as noted, the United States has filed a motion for summary judgment.  The United States argues that summary judgment should be entered on Plaintiff's FTCA claims because: 1) Plaintiff's failure to timely file his administrative claim deprives the Court of subject matter jurisdiction over the action; 2) Dr. Harper is an independent contractor and the Court lacks jurisdiction under the FTCA for tort claims arising from his alleged negligence; and 3) Plaintiff has not provided any expert testimony in support of his medical malpractice claim.  Motion, p. i, 10-18, 19-21, 22-23.

## II.    MOTION FOR SUMMARY JUDGMENT

### A.    STANDARD

Summary judgment is appropriate when the pleadings and evidentiary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute is "genuine" if the evidence permits a reasonable jury to return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  "Material facts" are "facts that

---

[1] Plaintiff has not moved the Court to exercise its discretion to revise the interlocutory order dismissing his <u>Bivens</u> claims in light of the Supreme Court's holding in <u>Jones v. Bock</u>, 127 S. Ct. 910 (2007).

might affect the outcome of the suit under the governing law." Id.  In considering a motion for summary judgment, the court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party.  Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000).

To obtain summary judgment, the moving party need not affirmatively negate the nonmovant's claims.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Instead, the moving party initially bears the burden only of "showing - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id. at 325 (internal quotations omitted).  Once the moving party has satisfied this burden, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact.  Id. at 324.  The  nonmoving party "may not rest upon mere allegation" in his pleadings to satisfy this requirement.  Anderson, 477 U.S. at 256.  Rather, the nonmoving party must "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Celotex, 477 U.S. at 324 (internal quotations omitted).

## B.  LACK OF SUBJECT MATTER JURISDICTION BASED UPON THE FAILURE TO TIMELY AND PROPERLY FILE AN ADMINISTRATIVE CLAIM

As an initial matter, the undersigned finds it necessary to briefly address the jurisdictional argument raised by the United States.  The United States contends that the Court lacks subject matter jurisdiction over Plaintiff's FTCA claims because his SF-95

administrative claim form was untimely presented July 29, 2005, outside the FTCA's two-year limit to provide notice of a claim.  Motion, p. 10.

In response, Plaintiff provided a copy of a SF-95 administrative claim form presented July 1, 2005, on his behalf by an attorney.  Response, Ex. C.  However, the Department of Justice ("DOJ") returned this form to Plaintiff's attorney because it believed the form was improperly executed.  Reply, Ex. 18.  Nevertheless, Plaintiff contends that the July 1, 2005, SF-95 form qualifies as a timely presented administrative claim.  Response, p. 2.

The United States replies that the defects in the July 1, 2005, SF-95 form, namely that Plaintiff's attorney presented the claim on Plaintiff's behalf without evidence of his authority to do so, prevent it from qualifying as a properly presented administrative claim.  Instead, the United States contends that Plaintiff's July 29, 2005, SF-95 form, which was presented after the DOJ rejected the July 1, 2005, SF-95 form, is the operative administrative claim and, accordingly, Plaintiff's administrative claim should not be considered presented until that date.  Reply, pp. 4-7.  The United States bases its argument upon Kanar v. United States, 118 F.3d 527, 528 (7th Cir. 1997), a Seventh Circuit Court of Appeals' decision which held that the elements of a properly presented administrative "claim" are found at 28 C.F.R. § 14.2(a) and include a requirement that a person presenting a claim on behalf of a claimant include evidence of his authority to present the claim.  In so holding however, the Seventh Circuit Court of Appeals noted a conflict among the Circuits concerning whether the evidence-of-authority element is truly part of the definition of a "claim."  Id. at 529.  The Kanar opinion also recognized

5

that the Tenth Circuit Court of Appeals has adopted a contrary view, that is, a "minimal notice" view which simply defines a "claim" as any document that identifies the allegedly tortious incident and demands a sum certain without incorporating § 14.2(a)'s evidence-of-authority requirement.  Id. (citing Cizek v. United States, 953 F.2d 1232, 1233 (10th Cir. 1992)).   The United States argues that Kanar's definition of "claim" is better-reasoned than the Tenth Circuit Court of Appeals' definition of "claim" articulated in Cizek, which according to the United States is simply dicta.  Reply, p. 6.  Implicit within the United States argument is its belief that Plaintiff's July 1, 2005, SF-95 form qualifies as a properly presented "claim" as defined by Cizek, but not under Kanar.

The United States has not identified any cases where the Tenth Circuit Court of Appeals or district courts in the Tenth Circuit have applied the definition of "claim" announced in Kanar.  See Reply, pp. 6-7.  To the contrary, the Court of Appeals has consistently, including in a relatively recent published opinion, defined a "claim" using the "minimal notice" elements enunciated in Cizek, namely: "1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim."  Estate of Trentadue ex. rel Aguilar v. United States, 397 F.3d 840, 852 (10th Cir. 2005) (quotations omitted); accord Cizek, 953 F.2d at 1233.

As the Tenth Circuit Court of Appeals has repeatedly applied its "minimal notice" definition of a properly presented "claim," which does not include the evidence-of-authority requirement, the undersigned is not persuaded by the United States argument that the definition of claim expounded in Kanar should be applied here.  Instead, this Court is bound to define "claim" in the manner stated by the Tenth Circuit Court of

Appeals in <u>Cizek</u>.  Accordingly, Plaintiff's July 1, 2005, SF-95 qualifies as a properly presented "claim" because it was presented in writing on a SF-95 form and contained a demand for a sum certain even though Plaintiff's attorney did not include evidence-of-authority to present the claim on Plaintiff's behalf.  <u>See</u> Response, Ex. C.

Further, based upon <u>Bradley v. United States</u>, 951 F.2d 268, 270-71 (10th Cir. 1991), the undersigned is also convinced that Plaintiff's FTCA claim based upon Dr. Harper's alleged misdiagnosis did not accrue until July 2, 2003, when Plaintiff visited Dr. Maxwell and was informed of the true nature of his eye condition, what steps needed to be taken to repair it, and what, if any, damage caused by the alleged delay in obtaining a proper diagnosis could be surgically repaired.  <u>See</u> <u>Plaza Speedway, Inc. v. United States</u>, 311 F.3d 1262, 1267-68 (10th Cir. 2002).  Accordingly, Plaintiff's SF-95 form dated July 1, 2005, was timely presented within two years of the July 2, 2003, date his claim accrued.  Summary judgment is not appropriate on this basis and the Court has subject matter jurisdiction over Plaintiff's FTCA claim.

### C.   THE GOVERNMENT'S FTCA LIABILITY FOR THE ACTS AND OMISSIONS OF INDEPENDENT CONTRACTORS

Next, the United States argues that summary judgment should be granted on Plaintiff's FTCA claims because Dr. Harper is an independent contractor.  Motion, pp. 19-22.

### 1.   PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that on May 1, 2003, he noticed a "dark spot" in his peripheral vision that was growing larger.  Complaint, p. 5.  He went to sick call and was given a May 9, 2003 appointment, but sought an earlier appointment because he believed the

7

condition could be serious.  Id.  Dr. Malcher, a physician at FCI-El Reno, scheduled an appointment for Plaintiff with Dr. Harper, a contract optometrist who examined inmates at FCI-El Reno, on May 7, 2003.  Id. at 5-6.

Plaintiff alleges that Dr. Harper diagnosed him with "floaters" on May 7, 2003.  Id. at 6.  On May 27, 2003, Plaintiff submitted a "cop out" to Dr. Malcher, indicating that his vision was getting worse and he claims that he received no response to this cop out.  Id. On June 18, 2003, Plaintiff submitted another cop out to Dr. Malcher, this time asking to be evaluated by an opthamologist.  Plaintiff was informed that he would be re-evaluated by Dr. Harper and would see an opthamologist if Dr. Harper believed such an appointment was warranted.  Id.  Plaintiff also submitted an Inmate Request to Staff to Warden Peterson, requesting the Warden's attention and Plaintiff's son called the Bureau of Prisons' (BOP) regional office attempting to get his father help.  Id. at 6-7.  On June 26, 2003, Dr. Malcher referred Plaintiff to an opthamologist "with urgency."  Id. at 7.

On July 2, 2003, Plaintiff was seen by Dr. Maxwell, an outside opthamologist, who scheduled Plaintiff for surgery on July 8, 2003, to repair a detached retina.  Id.  Plaintiff contends that his surgery was not performed as scheduled because FCI-El Reno was understaffed.  Id. at 8.  However, Plaintiff's surgery was conducted on July 15, 2003.  Id. Dr. Maxwell examined Plaintiff the following day and instructed him to return in two weeks.  Id.  Plaintiff did not have another appointment with Dr. Maxwell until September 3, 2003, where he was informed that his eye was healing as well as could be expected under the circumstances.  Id. at 10.

2.    **FACTS**

Only the facts relevant to the disposition of the motion are recited herein.  They are derived from the summary judgment evidence and materials submitted by the parties. All facts listed in Defendant's statement of material facts that Plaintiff failed to specifically controvert have been deemed admitted.  See LCvR 56.1(c).  Further, the complaint has been treated as an affidavit, to the extent its allegations are based upon facts within Plaintiff's personal knowledge, because it is accompanied by a sworn statement made under penalty of perjury.  See Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991).

In support of its motion, the United States has provided a copy of a professional non-personal services contract between the Bureau of Prisons ("BOP") and Dr. Harper. Pertinent provisions of this contract provide that:

(1)    Dr. Harper will provide "medical services in the form of optometry examinations for inmates at the Health Services Department at the Federal Correctional Institution." Ex. 4, p. 3;[2]

(2)    Dr. Harper's performance of the professional non-personal services "does not constitute an employer/employee relationship." Ex. 4, p. 10;

(3)    Dr. Harper's performance of the professional non-personal services "although not directly supervised, will be reviewed by the Clinical Director and verified by the designated contract monitor." Ex. 4, p. 3;

(4)    Dr. Harper "shall perform services in the Health Services Department at [FCI-El Reno]" using "equipment and supplies . . . provided by [FCI-El Reno]." Id.; and

---

[2] Exhibit 4, the contract between Dr. Harper and the BOP, is not included in the physical, "courtesy" copies of the motion that the United States provided to the Court.  However, Exhibit 4 was included with the electronically filed version of the motion and thus is available on the Court's Case Management/Electronic Case Filing system.  Citations to pages of this exhibit refer to the bold "Exhibit Pages" rather than the page numbers of the original document.

(5)     Dr. Harper must "[m]aintain medical liability insurance." Id.

###### 3.     APPLICABLE LAW

The FTCA is a limited waiver of the federal government's sovereign immunity from private suit.  See 28 U.S.C. § 1346(b).  "The prerequisite for liability under the FTCA is a 'negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" Trentadue, 397 F.3d at 852. Government employees include officers and employees of federal agencies, but not independent contractors.  Curry v. United States, 97 F.3d 412, 414 (10th Cir. 1996). Accordingly, the FTCA does not waive the federal government's sovereign immunity from suits based on the acts of independent contractors or their employees.  Id.

> [T]he critical question in determining whether an individual is a federal employee or an independent contractor for purposes of the FTCA is whether the federal government has the power to control the detailed physical performance of the individual.   Under this control test, [courts] must determine whether the government supervises the individual's day-to-day operations.   When the individual is a physician, however, [courts] recognize that a physician must have discretion to care for a patient and may not surrender control over certain medical details. Within these limits, [the court's] inquiry involves consideration of a number of factors, including:
>
>> (1) the intent of the parties; (2) whether the United States controls only the end result or may also control the manner and method of reaching the result; (3) whether the person uses his own equipment or that of the United States; (4) who provides liability insurance; (5) who pays social security tax; (6) whether federal regulations prohibit federal employees from performing such contracts; and (7) whether the individual has authority to subcontract to others.

<u>Tsosie v. United States</u>, 452 F.3d 1161, 1163-64 (10th Cir. 2006) (internal citations and quotations omitted).

### 4.    APPLICATION

The terms of the professional non-personal services contract between Dr. Harper and the BOP show that Dr. Harper is an independent contractor. Applying the seven-factor test delineated in <u>Tsosie</u>, the contract clearly shows that it was the intent of Dr. Harper and the BOP to establish an independent contractor relationship. <u>See</u> Motion, Ex. 4, p. 10. Moreover, the contract's provisions are clear that the BOP retained no control over the manner and method by which Dr. Harper rendered services at FCI-El Reno. <u>Id.</u> at Ex. 4, p. 3. Both of these factors mitigate towards finding that Dr. Harper was an independent contractor. However the third factor, whether Dr. Harper used his own equipment in providing services, points towards an employer/employee relationship between Dr. Harper and the BOP. But this is relatively insignificant considering the security concerns unique to the facility where Dr. Harper was to provide services - a federal prison - and because "[w]hen a physician shows up to work in today's world - either as an independent contractor or a full-fledged employee - he no longer is likely to carry all relevant medical instruments in a black satchel." <u>Tsosie</u>, 452 F.3d at 1164. As to the fourth factor, the contract called for Dr. Harper to provide his own liability insurance and Dr. Harper provided his own insurance which mitigates in favor of an independent contractor relationship. Ex. 4, pp. 3, 13. There is no evidence concerning Dr. Harper and the BOP's responsibilities for the payment of Social Security taxes or whether Dr. Harper has the authority to subcontract to others. Thus, these factors neither

favor nor disfavor finding that Dr. Harper is an independent contractor.  The parties have not identified any federal regulations prohibiting federal employees from performing such contracts and the undersigned has located none.  Accordingly, this factor points toward finding the existence of an independent contractor relationship.  <u>Tsosie</u>, 452 F.3d at 1164.  The United States' evidence compels a conclusion that Dr. Harper is an independent contractor.

In contrast, Plaintiff has not provided anything to raise a fact issue concerning Dr. Harper's independent contractor status.  Plaintiff argues that Dr. Harper is an employee of the BOP because he was paid directly by the BOP, the BOP "controlled the end results" of Dr. Harper's work, controlled the "manner and method in which he conducted his activities as they pertained to his agreement with the Bureau," and reviewed Dr. Harper's services.  Response, p. 5.  These arguments do not defeat the United States' motion.  First, they are merely Plaintiff's unsupported allegations and are actually refuted by the terms of the contract between Dr. Harper and the BOP.  <u>See</u> <u>Callahan v. Poppell</u>, 471 F.3d 1155, 1160 (10th Cir. 2006) (finding that plaintiff's conclusory allegation not based upon personal knowledge was insufficient to raise a fact issue).  Significantly, Plaintiff has not provided evidence showing that, in practice, Dr. Harper and the BOP conducted business in a manner other than as designated by their agreement.  Secondly, the source of payment is not a factor in deciding whether an independent contractor or employee relationship exists.  <u>See</u> <u>Tsosie</u>, 452 F.3d at 1164.

As the United States has shown that Dr. Harper was an independent contractor, it is entitled to summary judgment on Plaintiff's FTCA claim based upon Dr. Harper's

alleged medical negligence.  Thus, as to Plaintiff's FTCA claim against the United States based upon Dr. Harper's alleged negligence, it is unnecessary to evaluate the United States' summary judgment argument concerning Plaintiff's failure to provide expert testimony in support of his claim.

However, Plaintiff's FTCA claims against the United States are not based solely on Dr. Harper's acts and omissions.  Rather, Plaintiff also alleges that despite his complaints about his vision, he did not receive timely and proper care for his condition and that had he received such treatment, he would not have lost vision in his eye.  See Complaint, pp. 5-7, 9-11.  These allegations are separate from and made in addition to his allegations arising out of Dr. Harper's alleged misdiagnosis.  The United States acknowledges Plaintiff's allegations against BOP employees in its statement of material uncontroverted facts.  Motion, p. 5, Fact 13.  See also Plaintiff's Answers in Response to Defendant's First Set of Discovery, Motion, Ex. 11, pp. 4-5.  Further, Plaintiff complains that a correctional officer required him to perform certain duties in disregard of his medical-related work restrictions.  Id. at 8-9, 11.  The United States' summary judgment argument based upon Plaintiff's failure to provide expert testimony in support of his medical malpractice claims against Dr. Harper cannot fairly be read as an attack upon these claims.  Indeed, few, if any, of these claims are medical malpractice claims covered by Oklahoma's requirement that a medical negligence suit be supported by expert testimony.  Therefore, these FTCA claims remain since the arguments advanced in the United States' motion do not entitle it to summary judgment against them.

13

### III.    STATE LAW MEDICAL MALPRACTICE CLAIMS

Plaintiff has also asserted a state law medical malpractice claim against Dr. Harper. However, although Plaintiff filed his complaint in July of 2006, he has not yet served Dr. Harper and has made no recent efforts to do so.  See Letter, Nov. 20, 2006 [Doc. No. 12], p. 7.  Federal Rule of Civil Procedure 4(m) requires a court to dismiss a complaint if "service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint . . . ."  Therefore, Plaintiff should be ordered to show cause why his state law medical malpractice claims against Dr. Harper should not be dismissed for failure to timely serve Dr. Harper.

### RECOMMENDATION

For the foregoing reasons, the undersigned recommends that "Defendant United States' Motion for Summary Judgment" [Doc. No. 24] be **GRANTED** as to Plaintiff's FTCA claim premised upon Dr. Harper's acts and omissions, but otherwise **DENIED.** Accordingly, "Plaintiff's Motion for Enlargement of Time" [Doc. No. 27] is **DENIED**. Plaintiff's "Motion to Strike Defendant's Subject Matter Jurisdiction Defense Pursuant to Fed. R. Civ. P., Rule 12(f)" [Doc. No. 28], to the extent it is considered as motion and not as a sur-reply, is also **DENIED**.  Lastly, it is recommended that Plaintiff be required to show cause why his state law medical malpractice claim against Dr. Harper should not be dismissed for failure to timely serve Dr. Harper.

The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by December 17, 2007, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  The parties are further advised that failure to

make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal questions contained herein.  Moore v. United States, 950 F.2d 656 (10th Cir. 1991).

   **ENTERED this 27th day of November, 2007.**


_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE